```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                   :
MANGANARO CORPORATION,
MARYLAND                           :

     v.                            : Civil Action No. DKC 2005-2282
                                   :
TURNER CONSTRUCTION COMPANY
                                   :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case is the motion of Defendant Turner Construction Company to dismiss. (Paper 5). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, the motion will be denied.

**I.   Background**

On or around November 13, 2002, Plaintiff Manganaro Corporation, Maryland, a subcontractor, entered into two construction subcontracts with Defendant to perform work on a project located in Baltimore, Maryland. One subcontract was to perform the drywall and associated work (the "drywall subcontract"); the second subcontract was to perform the masonry and associated work (the "masonry subcontract").

Both subcontracts contain the same dispute resolution provision. The provision states:

> The parties recognize that problems and
> disputes between them may occur and that it is
> preferable for them to reach an amicable

>resolution of same without the need to resort to formal dispute resolution procedures.  In that regard, they each pledge to participate in good faith in voluntary and non-binding Alternate Dispute Resolution (ADR) procedures.  However, in the event that such disputes are not resolved by mediation or another ADR procedure as [Defendant] and [Plaintiff] may agree then such disputes shall be resolved at [Defendant's] sole option either in the manner and forum pursuant to which disputes between the Owner and [Defendant] are to be resolved under the terms of the General Contract [(i.e., binding arbitration)] or according to law.  Furthermore, [Plaintiff] agrees that [Defendant] shall have the exclusive right to join [Plaintiff] as a party in any dispute resolution procedure (including without limitation ADR procedures, binding arbitration or other judicial or non-judicial proceeding) between the Owner and [Defendant], together with such other subcontractors or parties as may be appropriate, where in the judgment of [Defendant] the issues in dispute are related to the work or performance of [Plaintiff].  Furthermore, [Plaintiff] expressly agrees to waive its right to trial by jury in case [Defendant] elects to resolve the dispute in litigation.

(Paper 1, ex. A, at 3).

During the performance of the subcontracts, disputes arose regarding Plaintiff's performance.[1]  Plaintiff alleges that as a result of the disputes, Defendant withheld payment on both of the subcontracts.  Plaintiff states that it sent a letter to William Brennan, senior vice president of Defendant, seeking to resolve the disputes.  In response to the letter, Plaintiff asserts that Mr.

---

[1] Both Defendant and the property owner raised concerns about water leakage problems as a result of Plaintiff's work.

Brennan arranged a face-to-face meeting between Benjamin Short, Defendant's vice president of operations, John Manganaro, Jr., Plaintiff's chairman, and Thomas Vagrin, Plaintiff's president, for the purpose of attempting to negotiate a resolution to the dispute. On August 15, 2005, the three met at Defendant's Virginia offices. Although they negotiated, the parties could not reach a settlement. Plaintiff asserts that at the end of the meeting, Mr. Manganaro advised Mr. Short that Plaintiff would pursue litigation, and that in response, "Mr. Short said words to the [e]ffect, 'that's fine, then I won't have to deal with this anymore.'"[2] (Paper 7, at 2).

On August 19, 2005, Plaintiff filed a complaint with this court, pursuant to the court's diversity jurisdiction under 28 U.S.C. § 1332. In the complaint, Plaintiff alleges that it completed all of its obligations under both subcontracts and, as a result, was entitled to payment under the subcontracts as well as payment for all change orders and extra work performed at Defendant's request. Plaintiff asserts the following claims: (1) Count 1, breach of the drywall subcontract; Count 2, violation of Md. Code Ann., Real Property §§ 9-302 *et seq.*; and Count 3, breach of the masonry subcontract. Plaintiff seeks $1 million dollars on each Count, along with costs and prejudgment interest. Plaintiff

---

[2] Defendant disputes that Mr. Short responded in this manner. Defendant maintains that Plaintiff threatened to sue Defendant both before and after the August 15, 2005, meeting, and that Mr. Short told Plaintiff that he could not stop him from suing.

3

also requests attorneys' fees pursuant to Md. Code Ann., Real Property § 9-303. On September 14, 2005, Defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

**II.  Motion to Dismiss**

Defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) or, alternatively Rule 12(b)(6), alleging that Plaintiff is precluded from bringing this suit because it failed to comply with the alternative dispute resolution clause in the subcontracts and failed to allege compliance in the complaint. Defendant characterizes the clause as a condition precedent to filing suit. Plaintiff acknowledges the alternative dispute resolution clause, but contends that no particular type of ADR is specified. By reference to the declaration of Thomas Vagrin, Plaintiff asserts that direct negotiation occurred and satisfies Plaintiff's ADR obligation.

If the issue is one of subject matter jurisdiction, the motion is governed by Fed.R.Civ.P. 12(b)(1) and a court can consider matters outside of the pleadings in its analysis. Under 12(b)(1), Plaintiff has the burden of proving the existence of subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Moreover,

> When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In determining whether jurisdiction exists,

4

> the district court is to regard the pleadings'
> allegations as mere evidence on the issue, and
> may consider evidence outside the pleadings
> without converting the proceeding to one for
> summary judgment. *Id.;Trentacosta v. Frontier
> Pacific Aircraft Indus.*, 813 F.2d 1553, 1558
> (9th Cir. 1987). The district court should
> apply the standard applicable to a motion for
> summary judgment, under which the nonmoving
> party must set forth specific facts beyond the
> pleadings to show that a genuine issue of
> material fact exists. *Trentacosta, supra*, 813
> F.2d at 1559 (citing *Celotex Corp. v. Catrett*,
> 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53,
> 91 L.Ed.2d 265 (1986)). The moving party
> should prevail only if the material
> jurisdictional facts are not in dispute and
> the moving party is entitled to prevail as a
> matter of law. *Trentacosta*, supra, 813 F.2d
> at 1558.

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied*, 503 U.S. 984 (1992). A district court may resolve the jurisdictional issue in two ways:

> The court may find insufficient allegations in
> the pleadings, viewing the alleged facts in
> the light most favorable to the plaintiff,
> similar to an evaluation pursuant to Rule
> 12(b)(6). Alternatively, after an evidentiary
> hearing, the court may weigh the evidence in
> determining whether the facts support the
> jurisdictional allegations. Where the court
> conducts an evidentiary hearing and engages in
> fact-finding to determine the jurisdictional
> question, a problem may arise if the
> jurisdictional facts are intertwined with the
> merits of the dispute; if this occurs,
> ordinarily the entire dispute is appropriately
> resolved by a proceeding on the merits.

*Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

If the issue is characterized more properly as one of a failure to state a claim pursuant to Rule 12(b)(6), a court may

consider only the pleadings unless it converts the motion to one for summary judgment.  Under 12(b)(6), Plaintiff must allege facts sufficient to state a claim.  The court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  If materials outside the pleadings are considered, and the motion is converted to one for summary judgment, it cannot be granted unless there are no material disputes of fact.

The proper procedural treatment of Defendant's motion is not entirely clear.  Sometimes courts analyze analogous issues under 12(b)(1); sometimes under 12(b)(6); and sometimes without stating which rule applies.  As will be explained, while not entirely free from doubt, analysis under 12(b)(6) is the better framework.

One example of the courts' treatment of a similar issue involves a motion to dismiss or to stay pending arbitration.[3]  It is relatively clear that a court is not divested of its jurisdiction if it stays a case pursuant to § 3 of the Federal Arbitration Act ("FAA").  *See The Anaconda v. Am. Sugar Ref. Co.*,

---

[3] Defendant asserts, and Plaintiff does not dispute, that the Federal Arbitration Act applies to this contract. (Paper 5, at 5 n.1).  Defendant further contends that the mandatory ADR clause should be enforced as an arbitration clause would be.

322 U.S. 42, 44 (1944) (noting that although § 3 of the FAA is not itself a source of jurisdiction, it also does not divest a court of jurisdiction even though the parties have agreed to arbitrate); *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 903 (D.C.Cir. 1998), *cert. denied*, *Liddle & Robinson, L.L.P. v. Kidder, Peabody & Co.*, 525 U.S. 1071 (1999) (finding that where a court stayed a case pursuant to § 3 of the FAA, it retained jurisdiction to ensure that the parties adhered to its previous order under the FAA and could impose sanctions to protect the effect of that order).

Because a court has the option to retain jurisdiction by staying a case pending arbitration, it would appear that if a court opted instead to dismiss the case for failure to arbitrate, the basis for dismissal would not be 12(b)(1) because the issue is not properly characterized as one of subject matter jurisdiction.[4] However, the case law, including that from the Fourth Circuit, is inconsistent. In a recent case, *Continental Casualty Co. v. American National Insurance Co.*, 417 F.3d 727 (7th Cir. 2005), the Seventh Circuit recognized the conflicting case law:

> Some courts have taken the view that, if a
> district court determines that parties have

---

[4] Moreover, the fact that a party may waive its right to arbitration also comports with the conclusion that it is not an issue of subject matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."); *Maxum Founds. v. Salus Corp.*, 779 F.2d 974, 981-82 (4th Cir. 1985) (noting that a party may waive its right to arbitration through active participation in litigation).

7

> agreed to arbitrate a dispute, the district court, at least temporarily, no longer has the authority to resolve arbitrable claims. *See* 9 U.S.C. § 3. Those courts consider that such a determination is jurisdictional and therefore, a Rule 12(b)(1) dismissal is appropriate. Other courts characterize the action as the plaintiff's failure to state a claim cognizable in federal court, a Rule 12(b)(6) dismissal. Indeed there is authority indicating that dismissal is entirely separate from the 12(b) rubric.

*Cont'l Cas. Co.*, 417 F.3d at 732 (footnotes omitted).

As the Seventh Circuit correctly recognized, some courts have dismissed cases for lack of subject matter jurisdiction where the parties failed to engage in mandatory arbitration.[5] *See Branchville Machinery Co. v. Agco Corp.*, 252 F.Supp.2d 307, 312 (E.D.Va. 2003) (finding that because all of the plaintiff's claims were subject to arbitration, dismissal under 12(b)(1) was warranted); *RoadTechs, Inc. v. MJ Highway Tech., Ltd.*, 79 F.Supp.2d 637, 639 (E.D.Va. 2000) (characterizing a dismissal for failure to arbitrate as properly construed under 12(b)(1)); *Jensen v. Klayman*, 115 Fed. App'x. 634 (4th Cir. 2004) (unpublished) (affirming without comment district court's dismissal that was based, in part, on lack of subject matter jurisdiction because of the parties' agreement to

---

[5] The Supreme Court's very recent decision in *Arbaugh v. Y & H Corp.* suggests that these prior characterizations may be incorrect. *See Arbaugh*, __ U.S. __, 126 S.Ct. 1235, 1242-45 (2006) (noting that courts have been "less than meticulous" on the "subject-matter jurisdiction/ingredient-of-a-claim-for-relief dichotomy," and cautioning against the use of the subject matter jurisdiction label where it is not appropriate).

arbitrate); *Silkworm Screen Printers, Inc. v. Abrams*, 978 F.2d 1256, No. 91-1631, 1992 WL 317187, at *6 (4th Cir. Nov. 4, 1992) (unpublished) ("If the district court finds that Silkworm agreed to arbitrate, it should enter an order directing arbitration in accordance with the agreement.  It may either dismiss [the] complaint for lack of subject matter jurisdiction or stay its proceedings pending arbitration.").

In other cases, the dismissal is treated as one for failure to state a claim under Rule 12(b)(6).  *See Sphere Drake Ins. Ltd v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 33-34 (2nd Cir. 2001) (affirming district court's dismissal of multiple claims, pursuant to Rule 12(b)(6), because they were subject to arbitration); *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45 n.1 (3rd Cir. 1991) ("Dismissal of a declaratory judgment action because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6)); *Davidson v. Becker*, 256 F.Supp.2d 377, 378 (D.Md. 2003) (analyzing a motion to dismiss based on an arbitration agreement under 12(b)(6)).

Still other courts have found that neither Rule 12(b)(1) nor 12(b)(6) provides the proper basis upon which to dismiss a case where there is an agreement to arbitrate.  *See Inlandboatmens' Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1078 n.2 (9th Cir. 2002) (noting that a failure to exhaust non-judicial remedies, including arbitration, "is properly considered a 'non-enumerated'

Rule 12(b) motion"); *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002) (stating that the proper course of action when a party seeks to invoke an arbitration clause is to *stay* the proceedings pending arbitration rather than to dismiss the case).

Finally, in many cases the courts do not specify the exact basis for the dismissal. *See BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (noting that dismissal is a proper remedy without articulating the rule pursuant to which dismissal should be granted); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (affirming the district court's dismissal where all issues were arbitrable but not stating the basis for the dismissal); *Mortimer v. First Mount Vernon Indus. Loan Ass'n*, No. Civ. AMD 03-1051, 2003 WL 23305155, at * 2 (May 19, 2003) (holding that the plaintiff must first mediate his claims before bringing a lawsuit and dismissing the case without stating the rule pursuant to which the case was dismissed).

A closely related analysis proceeds from the characterization that ADR is a condition precedent to litigation, which may be treated as a subject matter jurisdiction issue, *see, e.g., Interwave Technology, Inc. v. Rockwell Automation, Inc.*, No. Civ.A.05-398, 2005 WL 3605272, at *7 (E.D.Pa. Dec. 30, 2005), or as a pleading requirement, *see, e.g., Darling's v. Nissan N. Am., Inc.*, 117 F.Supp.2d 54, 61 (D.Me. 2000); *Am. Tech. Servs., Inc. v. Universal Travel Plan, Inc.*, No. Civ.A.1:05CV802(JCC), 2005 WL

10

2218437, at *2 (E.D.Va. Aug. 8, 2005); *Nat'l Mktg. Ass'n v. Broadwing Telecomms., Inc.*, No. 02-2017-CM, 2003 WL 1608416, at * 1 (D.Kan. Mar. 26, 2003).

Defendant contends that Plaintiff's claims should be dismissed because Plaintiff failed to exhaust the non-judicial remedies required under the subcontracts, and has not pled exhaustion in its complaint.  In the motion to dismiss, Defendant asserts, relying on the declaration of Thomas Kobylenski, that the initial non-binding ADR has not taken place and therefore that it has "not elected which forum will ultimately decide the parties' disputes should the initial ADR not result in complete resolution." (Paper 5, at 2).  Defendant states that if the initial ADR is unsuccessful, it has the sole option to proceed through arbitration, the dispute procedure set forth in its prime contract with the owner, or, alternatively, in court.[6]

Plaintiff responds by asserting that the August 15, 2005, meeting between Mr. Manganaro, Mr. Vagrin, and Mr. Short constituted the initial non-binding ADR process. Plaintiff states that "it is widely known and acknowledged in the construction industry that 'direct negotiations' between senior executives of the disputing parties is one (normal) form of [ADR]." (Paper 7, at

---

[6] Following the filing of Defendant's motion, Plaintiff asserts that its counsel contacted counsel for Defendant to determine if Defendant wanted to arbitrate, but that Defendant's counsel did not provide a conclusive response.  Thus, Plaintiff filed an opposition memorandum to Defendant's motion.

11

3).  Because the dispute could not be resolved, and because Defendant did not demand arbitration, Plaintiff filed the current lawsuit.[7]  Thus, presumably, Plaintiff contends that it could amend to plead exhaustion if required.

In its reply, Defendant argues that the August 15, 2005, meeting did *not* fulfill the initial ADR requirement of the subcontracts.  Defendant states that during the meeting, Plaintiff was unwilling to consider the corrective actions Defendant proposed to remedy the issues with the masonry work and that "[therefore, this meeting did not even rise to the level of a 'negotiation,' much less an ADR."  (Paper 9, at 3).  Defendant claims that after the meeting, "the parties' dispute has come into clearer focus" and "the time is ripe for the parties to engage in mediation or some other form of ADR conducted by a neutral party, as the Subcontracts contemplate."  Defendant also asserts that Plaintiff has no contractual or legal right to force Defendant to litigate in court claims that should be arbitrated with the owner.  Defendant states that the concerns about the masonry work have not been resolved with the owner and that if Defendant reaches a settlement with an owner, "then [Defendant] may elect 'at its sole option' to arbitrate or litigate Manganaro's claims."  *Id.*  If, on the other

---

[7] Moreover, Plaintiff, in a footnote, indicated that "it would be pleased to mediate this dispute" but emphasized that it wanted to proceed as quickly as possible to recover the money that it claims Defendant owes it.  (Paper 7, at 4 n.2).

12

hand, Defendant fails to reach a settlement with the owner, then Defendant has the exclusive right to join Plaintiff in an arbitration with the owner.  Finally, Defendant asserts that it has not waived its right to arbitration, because its right to select a forum does not become "ripe" until after the completion of the initial ADR process and until the masonry issue has been resolved with the owner, neither of which have occurred.

Although 12(b)(6) likely provides the better framework for analysis, regardless of the rule that is applied, the motion to dismiss will be denied.  As will be discussed below, there are material disputes of fact concerning compliance with the terms of the subcontracts, although Plaintiff can plead and present a *prima facie* case.  Thus, if the issue is one of subject matter jurisdiction, this court would need to convene an evidentiary hearing to resolve the factual dispute, or could defer the matter to trial on the merits.  *See Evans*, 166 F.3d at 647; *Lovern*, 190 F.3d at 654.  If the issue is one of stating a claim, then the motion should be denied, but Plaintiff should be required to amend to plead compliance with the ADR clause.

Defendant's argument relies on its own view of the language in the subcontract ADR provision, which is ambiguous.  The provision at issue mentions but does not specifically require mediation, or any other particular form of ADR involving a "neutral third party," as the initial ADR process.  The provision requires only that the

13

parties engage in "voluntary and non-binding Alternate Dispute Resolution (ADR) procedures." Moreover, although Defendant has the right to join Plaintiff in an arbitration or another dispute resolution procedure with the owner in certain instances, nothing in the subcontract gives Defendant the right to delay resolution of its disputes with Plaintiff pending the resolution of any issues it may have with the owner. Defendant's argument, taken to its logical end, would mean that even if it agreed that the initial ADR process had been completed, Defendant still would not be obligated to demand arbitration until any related issues with the owner were resolved and, during this period, Plaintiff would be prohibited from pursuing a legal remedy.

Plaintiff has presented sufficient evidence to avoid dismissal. The August 15, 2005, meeting may have been sufficient to fulfill the subcontract's initial ADR requirement. The parties met to discuss the alleged problems with Plaintiff's work and Defendant's nonpayment, in an attempt to resolve the issues. The fact that Plaintiff may not have been receptive to Defendant's proposed remedy and that the parties did not reach agreement does not mean that it could not be considered an attempt to negotiate a solution. Moreover, despite having multiple opportunities to do so, Defendant has yet to demand arbitration of this dispute, even some seven months after this case was filed.[8] Defendant's

---

[8] Defendant did not respond to Plaintiff's direct inquiry
(continued...)

14

statement that at some point in the future it may want to invoke the arbitration provision is an insufficient basis for this court to dismiss the case.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be denied, but Plaintiff will be required to amend its complaint to allege the facts contained in its opposition to the motion. Furthermore, given the procedural posture of the case, the court will refer the matter to a magistrate judge for alternative dispute resolution, inasmuch as the parties seem to be amenable to such efforts. As soon as Defendant has filed an answer to Plaintiff's anticipated Amended Complaint, a full scheduling Order will be entered. A separate Order will follow.

                                          /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge

---

[8](...continued)
regarding whether it wanted to arbitrate nor has Defendant asked this court to compel arbitration.